No. 13-12450

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

XILENA M. CACERES, on behalf of herself and all others similarly
situated,

*Plaintiff-Appellant,*

v.

McCALLA RAYMER, LLC,

*Defendant-Appellee.*

On Appeal from a Final Order of the
United States District Court for the Southern District of Florida
No. 1:13-cv-20035-JLK, Hon. James L. King, U.S.D.J.

**APPELLANT'S REPLY BRIEF**

Scott L. Nelson
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
202-588-1000
202-588-7795 (Fax)
snelson@citizen.org

Scott D. Owens
Scott D. Owens, P.A.
664 E. Hallandale Beach Blvd.
Hallandale, FL 33009
954-589-0588
954-337-0666 (Fax)
scott@scottdowens.com

*Attorneys for Appellant*

December 2, 2013

# TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................ 1

I.      McCalla Raymer's Letter Was an Initial Communication in
        Connection with Collection of a Debt. ................................................ 1

II.     The Letter Violated Section 1692g(a)(3). ........................................ 20

CONCLUSION ............................................................................ 28

CERTIFICATE OF COMPLIANCE ............................................................ 29

CERTIFICATE OF SERVICE .................................................................. 30

# TABLE OF CITATIONS

**Page(s)**

**Cases:**

*Acosta v. Campbell*,

    309 F. Appx. 315 (11th Cir. 2009) ........................................ 14, 15, 16

*Allen ex rel. Martin v. LaSalle Bank, N.A.*,

    629 F.3d 364 (3d Cir. 2011) ................................................................ 6

\* *Bourff v. Rubin Lublin, LLC*,

    674 F.3d 1238 (11th Cir. 2012)................................................. 5, 8, 21

*Bridge v. Ocwen Fed. Bank, FSB*,

    681 F.3d 355 (6th Cir. 2012)............................................................ 21

*Caprio v. Healthcare Revenue Recovery Group, LLC*,

    709 F.3d 142 (3d Cir. 2013) ............................................................ 24

*Chalik v. Westport Recovery Corp.*,

    677 F. Supp. 2d 1322 (S.D. Fla. 2009)............................................... 5

*Clark v. Shapiro & Pickett, LLP*,

    452 F. Appx. 890 (11th Cir. 2012) ........................................ 14, 15, 16

*Federal Home Loan Mortgage Corp. v. Lamar*,

    503 F.3d 504 (6th Cir. 2007)...................................................... 24, 25

*Gburek v. Litton Loan Servicing LP,*

    614 F.3d 380 (7th Cir. 2010)........................................................ 6, 7, 8

*Glazer v. Chase Home Fin. LLC,*

    704 F.3d 453 (6th Cir. 2013)............................................................. 16

*Grden v. Leikin Ingber & Winters PC,*

    643 F.3d 169 (6th Cir. 2011)............................................................... 6

*Greco v. Trauner, Cohen & Thomas, L.L.P.,*

    412 F.3d 360 (2d Cir. 2005) ........................................................ 23, 24

*Hasbun v. Recontrust Co., N.A.,*

    508 F. Appx. 941 (11th Cir. 2013) ..................................................... 17

\* *Iyamu v. Clarfield, Okon, Salomone, & Pincus, P.L.,*

    __ F. Supp. 2d __, 2013 WL 3192038

    (S.D. Fla. June 24, 2013) .................................................................. 23

*Jian le Lin v. U.S. Atty. Gen.,*

    681 F.3d 1236 (11th Cir. 2012)......................................................... 10

\* *LeBlanc v. Unifund CCR Partners,*

    601 F.3d 1185 (11th Cir. 2010)...................................... 4, 5, 8, 21, 24

*McCollough v. Johnson, Rodenburg & Lauinger, LLC,*

    637 F.3d 939 (9th Cir. 2011)............................................................... 6

*Owens v. Ronald R. Wolf & Assocs., P.L.*,

    2013 WL 6085121 (S.D. Fla. Nov. 19, 2013) ..................................... 13

*Randolph v. IMBS, Inc.*,

    368 F.3d 726 (7th Cir. 2004) ................................................. 21, 22, 27

\* *Reese v. Ellis, Painter, Ratterree & Adams, LLP*,

    678 F.3d 1211 (11th Cir. 2012) ........................... 4, 5, 8, 12, 13, 14, 16

*Sayyed v. Wolpoff & Abramson*,

    485 F.3d 226 (4th Cir. 2007) ............................................................. 6

*Schmitt v. FMA Alliance,*

    398 F.3d 995 (8th Cir. 2005) ........................................................... 21

\* *Simon v. FIA Card Servs., N.A.*,

    732 F.3d 259 (3d Cir. 2013) .............................................................. 6

*Sparks v. Phillips & Cohen Assocs., Ltd.*,

    641 F. Supp. 2d 1234 (S.D. Ala. 2008) ........................................... 25

*Taylor v. Heath W. Williams, L.L.C.*,

    510 F. Supp. 2d 1206 (N.D. Ga. 2007) ....................................... 19, 20

*Trucap Grantor Trust 2010-1 v. Pelt,*

    84 So.3d 369 (Fla. Dist. Ct. App. 2012),

    *rev. denied*, 103 So.3d 141 (Fla. 2012) ....................................... 27, 28

* *Vega v. McKay*,

    351 F.3d 1334 (11th Cir. 2003)........................................... 8, 9, 10, 15


**Statutes and Rules:**

Fair Debt Collection Practices Act (FDCPA),

    15 U.S.C. §§ 1692 *et. seq*. ........................................... *passim*

    § 1692a(2) ...................................................................... 5

    § 1692c .......................................................................... 18

    § 1692c(c) ...................................................................... 18

    § 1692e .......................................................................... 14

    § 1692g............................................................................ *passim*

\*     § 1692g(a) ..................................................................... *passim*

\*     § 1692g(a)(3)................................................................ 20, 21

    § 1692g(b) ..................................................................... 24

\*     § 1692g(d) ..................................................................... 9, 10, 19

    Fed. R. Civ. P. 11(b) ..................................................... 22

# ARGUMENT

## I. McCalla Raymer's Letter Was an Initial Communication in Connection with Collection of a Debt.

McCalla Raymer does not dispute that it is a "debt collector" under the Fair Debt Collection Practices Act (FDCPA), that Ms. Caceres is a "consumer," that its letter to her provided information about a debt it claimed she owed, and that the letter was its first communication with Ms. Caceres. Nonetheless, McCalla Raymer contends that its letter was not an "initial communication with a consumer in connection with the collection of any debt," 15 U.S.C. § 1692g(a), because it did not attempt to collect a debt. The letter's terms, the FDCPA's plain language, and a host of judicial decisions contradict McCalla Raymer's position.

**A.** McCalla Raymer's argument rests in large part on an incomplete description of its letter. According to McCalla Raymer, the letter simply described a foreclosure proceeding—although it concedes no such proceeding had been filed when the letter was sent—and provided information about the underlying debt and Ms. Caceres's right to dispute it, without in any way even *implying* that McCalla Raymer sought to collect the debt itself. Thus, McCalla Raymer asserts, the letter cannot be understood as intended even in part to induce payment of the debt.

McCalla Raymer's implausible characterization of the letter virtually ignores its fifth paragraph, which told Ms. Caceres not only the amount she was said to owe, but also specified that payment must be "in certified funds." App. Tab 10-1, at 2. The reference to "certified funds" would be completely unnecessary if McCalla Raymer did not intend to tell Ms. Caceres how to pay her debt and to encourage her to do so. The letter continued, "Because of interest, late charges, and other charges that may vary from day to day, the amount due *on the day you pay* may be greater. Hence, *if you pay* the amount shown above, an adjustment may be necessary after we receive *your certified funds*, in which even we will inform you before *depositing the check for collection*. For further information, please call (407) 674-1850." *Id*. (emphasis added). McCalla Raymer's contention that the letter was not intended even to suggest that Ms. Caceres pay the debt is impossible to square with these detailed instructions about how she should arrange payment by certified check. And McCalla Raymer's assertion that it had to include the information that the payment amount could change in order to ensure the accuracy of its statement concerning the amount of the debt, MR Br. 15, n.4,[1] fails to

---

[1] Citations to McCalla Raymer's brief take the form "MR Br. _."

account for why the letter provided such specific information about the *form of payment* that it demanded.

In addition, the letter did not say, as McCalla Raymer argues, that McCalla Raymer was contemplating an effort to foreclose on the creditor's security interest and was not otherwise attempting to collect the full amount of the debt. Indeed, the letter did not directly state, particularly not in terms that a layman would understand, that McCalla Raymer was about to initiate a foreclosure proceeding at all. It confusingly referred to what would appear to be the name of a case and mentioned "the lawsuit," although no action of any kind was on file and the letter nowhere explained what McCalla Raymer meant by "the lawsuit." *Id*. at 1, 2. It also suggested that McCalla Raymer was considering pursuing a personal judgment against Ms. Caceres for the full amount of the debt unless she was bankrupt. *Id*. at 1.

The letter also stated, twice, that McCalla Raymer was engaged in "collection efforts" that would continue unless and until Ms. Caceres disputed the debt or requested the name of the original creditor. *Id*. at 1, 2. And it said unequivocally that "[t]his communication is for the pur-

- 3 -

pose of collecting a debt, and any information obtained from the debtor will be used for that purpose." *Id*. at 2.

From the standpoint of Ms. Caceres, or of any reasonable person, the letter unambiguously sought to collect a debt and instructed her to arrange payment. Although McCalla Raymer objects to the characterization of the letter as a "dunning letter," MR Br. 7, n.3, it ignores this Court's own definition of that term: "a 'dunning letter' may be considered as simply another name for a letter of collection." *LeBlanc v. Unifund CCR Partners, ZB*, 601 F.3d 1185, 1189 n.7 (11th Cir. 2010). By its express acknowledgment, that is exactly what McCalla Raymer's letter was: a letter "for the purpose of collecting a debt." App. Tab 10-1, at 2.

**B.**    McCalla Raymer makes no effort to square its assertion that its letter was not related to collection of a debt with the plain terms of the FDCPA—thus bypassing the point where, as this Court has recognized, "all such inquiries must begin: with the language of the statute itself." *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012) (citation omitted). The statute says that a "communication" subject to the FDCPA is one that involves "the conveying of information regarding a debt directly or indirectly to any person through

- 4 -

any medium." 15 U.S.C. § 1692a(2); *see*, *e.g.*, *Chalik v. Westport Recovery Corp.*, 677 F. Supp. 2d 1322, 1327 (S.D. Fla. 2009) (emphasizing breadth of the statutory definition). McCalla Raymer has no answer to the point that its letter was a communication under the FDCPA because it conveyed information regarding a debt, so it ignores the statutory language altogether, never even bothering to cite it.

Likewise, the letter satisfies the basic requirement imposed by the plain language of § 1692g(a): It is "in connection with the collection of [a] debt." The letter's references to McCalla Raymer's "collection efforts," App. Tab 10-1, at 1, and the instructions it provides for making payment in certified funds, *id*. at 2, leave no room for doubt that, as the letter expressly acknowledged, its "purpose" was "collecting a debt." *Id*. This Court has emphasized that a letter's explicit statement that its purpose is collection of a debt is an important indication that it is a communication subject to the FDCPA. *Reese*, 678 F.3d at 1217; *Bourff v. Rubin Lublin LLC*, 674 F.3d 1238, 1241 (11th Cir. 2012); *LeBlanc*, 601 F.3d at 1196. McCalla Raymer nowhere acknowledges the importance that this Court's decisions have attached to a communication's explicit acknowledgment that its purpose is collecting a debt.

C.    McCalla Raymer asserts repeatedly that the letter did not *expressly* ask Ms. Caceres to make payment. McCalla Raymer points to nothing in the statutory language, however, that requires an express request for payment. Federal appellate decisions unanimously reject the view that an explicit demand for payment is necessary to subject a communication to the FDCPA's requirements. As the Third Circuit recently stated, "a 'communication' need only convey information regarding a debt and is not limited to specific requests for payment." *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 266 (3d Cir. 2013) (citations and internal quotation marks omitted); *see also Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011); *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 n.5 (3d Cir. 2011); *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th Cir. 2011); *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380 (7th Cir. 2010); *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 228, 230–32 (4th Cir. 2007). By contrast, McCalla Raymer cites *no* authority for its contention that an express request for payment is a sine qua non of a communication in connection with collection of a debt.

The Seventh Circuit's decision in *Gburek*, which McCalla Raymer itself cites, MR Br. 19, n.7, is particularly damaging to McCalla Raymer's position. There, as here, the debt collector sent a pre-foreclosure letter to the consumer advising her of the amount claimed to be due and advising her about her payment options. *See Gburek*, 614 F.3d at 382. Applying a "commonsense inquiry" to determine "whether a communication from a debt collector is made in connection with the collection of any debt," the court rejected the debt collector's argument that the absence of an explicit demand for payment meant that the communication was outside the scope of the FDCPA. *Id*. at 385. The court held that although the debt collector's letter "did not explicitly ask for payment, it was an offer to discuss [the consumer's] repayment options, which qualifies as a communication in connection with an attempt to collect a debt." *Id*. at 386.

Similarly, in this case, McCalla Raymer's letter may not have demanded payment in so many words, but its explicit discussion of Ms. Caceres's repayment options—that is, its insistence on payment in certified funds—together with its implied threat of imminent legal action, its explicit references to "collection efforts," and its statement that it is an for

the purpose of collecting a debt, leave no room for doubt that it is con-
nected with collecting the debt.[2]

As this Court put it in *Reese*, "[i]n light of all that language stating
that the law firm is attempting to collect a debt, the complaint sufficient-
ly alleges that the notice is a communication related to 'the collection of
[a] debt[.]'" 678 F.3d at 1217. Similarly, in *Bourff*, this Court held that a
letter that stated that a law firm had been retained by a creditor to col-
lect a debt, acknowledged that the letter was "an attempt to collect a
debt," and (like the letter in this case) told the consumer how to contact
the debt collector in order to get current information about the payoff
amount, was a communication subject to the FDCPA. *Bourff*, 674 F.3d at
1241.

**D.**    McCalla Raymer's position ultimately rests on its contention
that this Court's decision in *Vega v. McKay*, 351 F.3d 1334 (11th Cir.
2003), and the codification of that ruling in 15 U.S.C. § 1692g(d) some-

---

[2] The court in *Gburek* noted that the letter's statement that it was
an attempt to collect a debt did not "automatically" make it a communi-
cation in connection with collection of a debt, 614 F.3d at 386 n.3, but did
not disagree with the point made by this Court in *Reese*, *Bourff*, and *Le-
Blanc* that such language may be considered together with other features
of a letter to establish that it is a debt collection communication.

how exempt its letter from the requirements applicable to initial communications with consumers under § 1692g(a). But McCalla Raymer cannot deny that what *Vega* held was that the service of *pleadings* initiating a legal action against a consumer is not an initial communication. 351 F.3d at 1337. McCalla Raymer does not argue that the letter it sent Ms. Caceres—before it had even filed an action against her—was a legal pleading, or that it was accompanied by any pleadings. Indeed, the letter did not even tell her that McCalla Raymer had filed or was about to file an action against her. Nothing in *Vega*'s holding ("a legal action does not constitute an 'initial communication,'" *id*.) or its reasoning ("it seems far more consistent with the purpose of the Act that the term 'communication' as used does not include a 'legal action or pleading,'" *id*.) suggests that such a letter, which is neither a pleading nor even a notice of the commencement of a legal action, is exempt from the requirements imposed on an initial communication under § 1692g(a).

Moreover, McCalla Raymer acknowledges that Congress's subsequent enactment of §1692g(d) was intended to "confirm" the ruling of *Vega*. MR Br. 15. The terms of § 1692g(d) are, as McCalla Raymer itself points out (MR Br. 16) unambiguous: "A communication *in the form of a*

*formal legal pleading in a civil action* shall not be treated as an initial communication for purposes of subsection (a)." (Emphasis added.) McCalla Raymer's remarkable assertion that the "plain language of § 1692g(d)" supports its position, MR Br. 16, is exactly backwards. McCalla Raymer's letter was not a communication "in the form of a formal legal pleading," so the plain language of § 1692g(d) *forecloses* the argument that it is excluded from the category of initial communications. That the letter does not satisfy the clearly defined terms of the § 1692g(d) exception affirmatively demonstrates that it is *not* exempt from the requirements imposed by § 1692g(a). McCalla Raymer does not even address the point that when a statute explicitly defines an exception, as does § 1692g(d), courts are not free to disregard the limits placed on the exception. *See Jian le Lin v. U.S. Atty. Gen.*, 681 F.3d 1236, 1240 (11th Cir. 2012).

Taken together, all *Vega* and § 1692g(d) establish is that if McCalla Raymer had limited its communications with Ms. Caceres to the service of foreclosure pleadings upon her, it would not have had to supply a validation notice under § 1692g(a). But Ms. Caceres does not claim that the initiation of the foreclosure proceedings, and the consequent service of

- 10 -

pleadings upon her, was an initial communication under § 1692g(a). *The initial communication was the letter that McCalla Raymer chose to send days earlier, advising her of its retention to collect a debt from her, the amount of that debt, and how to go about paying it*. That McCalla Raymer would not have been *required* to send such a letter if it did nothing but serve its foreclosure papers does not mean that, having chosen to send the letter, McCalla Raymer is excused from compliance with the terms of § 1692g(a). The letter, because it was a communication in connection with collection of a debt, was required either to contain or be followed within five days by the statements and disclosures required by § 1692g(a). That McCalla Raymer later initiated foreclosure proceedings that would not by themselves trigger § 1692g(a) does not render § 1692g(a) inapplicable to the letter McCalla Raymer had already sent.

**E.**    McCalla Raymer asserts, however, that the letter was "sent as part of the foreclosure process," MR Br. 15, a point that it says follows from Ms. Caceres's allegation that it is McCalla Raymer's practice to send such letters shortly before serving consumers with lawsuits. *Id*. at 22 (citing App. Tab 10, § 11). Ms. Caceres's allegation that McCalla Raymer has a practice of sending "demand letters" before suing consumers,

App. Tab 10, § 11, however, is hardly an "admission" that such letters are "in relation to the foreclosure action" and are not "attempt[s] to collect a debt." MR Br. 22–23. Nothing about the process of initiating a formal foreclosure proceeding requires a debt collector to begin by sending a letter that seeks to collect the debt *outside* of the foreclosure process, or provides a reason to exempt such letters from the demands that the FDCPA places on communications related to debt-collection efforts.

To be sure, the letter may have related in some sense to the foreclosure proceeding that McCalla Raymer was about to file. But the statute does not exempt communications in connection with debt collection from the FDCPA's requirements merely because they *also* relate to an imminent foreclosure proceeding. This Court squarely held in *Reese* that a communication may relate to both a foreclosure proceeding and to debt collection, and that such a communication is subject to the FDCPA's requirements. 678 F.3d at 1217.

McCalla Raymer asserts that *Reese* is irrelevant, but it is hard to understand how that could be. In *Reese*, as in this case, a debt collector contended that a letter to a consumer was not a communication in connection with the collection of a debt, but was merely intended to inform

the debtor that the debt collector was going to enforce a security interest through foreclosure. Nonetheless, the Court in *Reese* held that because the letter *also* conveyed information related to collection of a debt, it was subject to the FDCPA. *See id.*

As evidence that the letter in *Reese* was related to debt collection, the Court pointed to features similar to those of McCalla Raymer's letter: The letter in *Reese* sought payment of the full amount of the debt on a promissory note, not just recovery of the creditor's security interest. *See id*. Likewise, here, McCalla Raymer's letter was not limited to information about possible foreclosure on her property—indeed, it did not discuss that subject at all—but instead told Ms. Caceres that it might seek full payment of the amount due on her promissory note through a personal judgment, and gave instructions for payment of the full amount of the debt through certified funds. App. Tab. 10-1, at 1–2. Moreover, as in this case, the letter in *Reese* referred repeatedly to the debt collector's collection efforts and expressly stated that it was attempting to collect a debt. *Reese*, 678 F.3d at 1217. *Reese*'s analysis is directly on point.[3]

---

[3] *See also Owens v. Ronald R. Wolf & Assocs., P.L.*, 2013 WL 6085121 at *2 (S.D. Fla. Nov. 19, 2013) (holding that a letter that, like the McCalla Raymer letter, referred to the amount owed by the plaintiff,

McCalla Raymer's observation that *Reese* was not about § 1692g, MR Br. 18, is true but irrelevant: *Reese* concerned whether a communication violated § 1692e, which, exactly like § 1692g, is triggered by communications "in connection with the collection of any debt." 15 U.S.C. § 1692e.[4]

**F.**    In the face of *Reese*, McCalla Raymer relies principally on this Court's nonprecedential decisions in *Clark v. Shapiro & Pickett, LLP*, 452 F. Appx. 890 (11th Cir. 2012), and *Acosta v. Campbell*, 309 F. Appx. 315 (11th Cir. 2009), for its assertion that the FDCPA does not apply to the letter because it was followed by the initiation of foreclosure proceedings. But neither decision supports McCalla Raymer's position that any communication that may be related in some way to a possible foreclosure proceeding falls outside the FDCPA. *Clark* decided only that a letter that provided information solely concerning *occupancy rights* in a residence

provided instructions for making payment, and acknowledged that it was an attempt to collect a debt was a communication in connection with the collection of a debt under the FDCPA and was not merely part of a foreclosure action).

[4] Indeed, it matters little whether this case is viewed as falling under § 1692g(a) or § 1692e, because both provisions are triggered by communications in connection with a debt, and both are violated if the communication omits or alters the statements required by § 1692g(a) in a manner that could mislead the least sophisticated consumer.

on which an FHA mortgage was being foreclosed—a letter required by federal regulations—was not an initial communication under the FDCPA because it said nothing about collection of the underlying debt. *See Clark*, 452 F. Appx. at 894–95. *Acosta* held that a letter from counsel for the creditor in an ongoing foreclosure proceeding to counsel for one of the other parties (not the debtor) was not in connection with the collection of a debt. *See Acosta*, 309 F. Appx. at 318–20. Neither decision stands for the proposition that a communication to a consumer about a debt before any foreclosure action has even been initiated is outside the scope of the FDCPA.

McCalla Raymer points to broad dicta in *Clark* and *Acosta* to the effect that "a communication made by a party in a foreclosure action or by its counsel regarding the foreclosure action is not a 'communication'" under the FDCPA. MR Br. 21. Dicta in unpublished opinions is of course not binding, and the reason *Acosta* offered for advancing this broad statement, unnecessary to its holding, is not compelling: *Acosta* said that the point followed from *Vega*'s holding that the FDCPA does not apply to *pleadings*, 309 F. Appx. at 320, but the exclusion of pleadings, now in-

corporated in the statute itself, hardly implies the exclusion of any other communications concerning foreclosures.

*Acosta* and *Clark* also presuppose that foreclosure actions do not constitute debt collection. In *Reese*, however, this Court declined to embrace that proposition, finding it unnecessary to the resolution of the case. *See Reese*, 678 F.3d at 1218 n.3. Adoption of McCalla Raymer's implicit position that foreclosure is, by nature, not debt collection would place this Court in conflict with decisions of other circuits that have correctly rejected that proposition. *See Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 459–65 (6th Cir. 2013).

Most importantly, the Court's precedential opinion in *Reese* forecloses McCalla Raymer's reliance on *Acosta* and *Clark* under the circumstances of this case. *Reese* holds that communications related to foreclosures are subject to the FDCPA if they are also in connection with the collection of a debt, negating any possibility that the unpublished opinions in *Clark* and *Acosta* could support the broad rule McCalla Raymer advocates. *Reese*, 678 F.3d at 1217. McCalla Raymer argues that "*Reese* does not undermine [*Clark* and *Acosta*], as the letter itself at issue in *Reese* constituted debt collection activity because it demanded payment

- 16 -

on a promissory note, and no foreclosure action had been filed." MR Br. 21. Exactly the same is true here: No foreclosure action had been filed when McCalla Raymer sent the letter, and the letter concerned collection of the debt from Ms. Caceres.

**G.**     McCalla Raymer's reliance on another nonprecedential decision of this Court, *Hasbun v. Recontrust Co., N.A.*, 508 F. Appx. 941 (11th Cir. 2013), is also wholly unwarranted. In *Hasbun*, this Court ruled that the defendant was not a debt collector and was, therefore, not subject to the FDCPA at all. *Id.* at 941. The panel also noted that the communication in *Hasbun* was limited to notifying the debtor that a foreclosure action was being initiated and expressly said that it was *not* a demand for payment on the debtor's promissory note. *Id.* Here, by contrast, the letter *was* from a debt collector, did *not* say that a foreclosure was being initiated, and did *not* disclaim any attempt to collect on the promissory note. It *did* seek to collect, in certified funds, the full amount claimed due on the note. *Hasbun* could hardly be more different from this case.

**H.**     McCalla Raymer's letter was not made in the course of a foreclosure proceeding, nor did it give notice of such a proceeding. The most that can be said is that it *implied* that McCalla Raymer was about to ini-

- 17 -

tiate a lawsuit of some kind, seeking either an in personam judgment or foreclosure, or both. But the FDCPA does not exclude communications that inform the consumer that a debt collector may resort to a judicial remedy. Rather, the express language of the statute demonstrates that a letter expressing a debt collector's intent to "invoke a specified remedy" is a communication in connection with the collection of a debt. As explained in Ms. Caceres's opening brief (at 26–27), 15 U.S.C. § 1692c(c) provides that communications expressing such an intent are exempt from certain restrictions imposed on communications in connection with collection of a debt by § 1692c. Section 1692c(c) makes clear that such communications *are* communications in connection with collection of a debt, as the exception would otherwise be unnecessary. Section 1692g, unlike § 1692c, contains no exception for such communications. Thus, even assuming that McCalla Raymer is correct in asserting that its letter conveyed an intention to initiate a lawsuit, the statutory language explicitly indicates that such a letter is a communication within the meaning of § 1692g. McCalla Raymer ignores this point.

**I.**    The nub of McCalla Raymer's argument is its assertion that a ruling in its favor "would simply implement the well-established rule

that if a law firm *only interacts with a consumer through a legal proceeding*, the firm is not required to give the validation notice otherwise required by § 1692g(a) to be given within five days of an 'initial communication.'" MR Br. 19 (emphasis added). McCalla Raymer did not, however, *only* interact with Mc. Caceres through a legal proceeding. Before even initiating such a proceeding, it sent her a letter informing her of her debt on a promissory note and telling her how she should go about arranging payment. The "well-established rule" that McCalla Raymer invokes only underscores why its argument that its letter was exempt from the requirements of § 1692g(a) is wrong.

Ironically, McCalla Raymer goes on to cite a decision, *Taylor v. Heath W. Williams, L.L.C.*, 510 F. Supp. 2d 1206 (N.D. Ga. 2007), that explains exactly why its position is wrong. In *Taylor*, as in this case, a law firm communicated with a consumer about her debt before filing a legal action against her. The law firm argued that its actions were not subject to § 1692g because the initiation of litigation, under *Vega* and § 1692g(d), is not an initial communication. The court rejected the law firm's effort to shield its prelitigation communications from the FDCPA merely because it later filed an action against the consumer: "If the De-

- 19 -

fendants simply filed the … action without communicating with the Plaintiff, they could not be held liable under [§ 1692g]. However, because they did communicate with her, they were required to provide notice." *Taylor*, 510 F. Supp. 2d at 1214. Exactly the same is true here: Because McCalla Raymer sent Ms. Caceres a collection letter before filing an action, it is subject to §1692g.

McCalla Raymer nonetheless tries to twist *Taylor*'s reasoning in its favor, asserting that "[h]ere, there is no allegation that McCalla communicated with Caceres other than through the service of the foreclosure lawsuit and the Notice"—*i.e.*, the letter—and that "*Vega* compels the conclusion that neither … is an 'initial communication' that would trigger the notice requirements of § 1692g." MR Br. 20. But *Vega* says nothing to suggest that McCalla Raymer's prelitigation collection letter is outside § 1692g, no matter how often McCalla Raymer says it does. And without support for extending *Vega* to a prelitigation collection letter, McCalla Raymer's argument collapses like a house of cards.

## II.    The Letter Violated Section 1692g(a)(3).

A.    McCalla Raymer's insistence that its letter was not a communication under § 1692g(a) reflects its recognition that the letter, on its

face, failed to comply with the requirement that the letter state that if the consumer does not dispute the debt within thirty days, the *debt collector* will assume the debt is valid. 15 U.S.C. § 1692g(a)(3). McCalla Raymer's letter instead said that the *creditor* would assume the debt was valid if it was not disputed within thirty days. App. Tab 10-1, at 1.

McCalla Raymer does not contest that the standard for determining whether a deviation from the requirements set forth in§ 1692g(a) is whether the debt collector's misstatement would be likely to mislead the least sophisticated consumer. *See LeBlanc*, 601 F.3d at 1193–94. A communication that violates that standard gives rise to a claim under the FDCPA regardless of whether it actually misled the consumer. *Bourff*, 674 F.3d at 1241.

McCalla Raymer also cannot contest the point that the "distinction between creditors and debt collectors is fundamental to the FDCPA." *Schmitt v. FMA Alliance,* 398 F.3d 995, 998 (8th Cir. 2005) (quoting *Randolph v. IMBS, Inc.,* 368 F.3d 726, 729 (7th Cir. 2004)). Because the two categories are "mutually exclusive," *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012), saying that a "creditor" will do something necessarily means something very different from saying that a

"debt collector" will. The potential of such a statement to mislead a consumer of any degree of sophistication is evident.

**B.**    Echoing the district court, McCalla Raymer asserts that the difference is inconsequential because if the creditor assumes a debt is valid, it necessarily follows that its agent, the debt collector, will also do so. That point is far from obvious, and indeed incorrect: Agents may be required to follow directions from their principals, but they do not necessarily make the same "assumptions." Thus, a law firm generally has a duty to exercise its *own* diligence with respect to the facts on which it acts and may not simply adopt the assumptions of its clients. *See*, *e.g.*, Fed. R. Civ. P. 11(b) (providing that an attorney's signature on a pleading certifies that the attorney has made a reasonable inquiry into the facts). The FDCPA itself, moreover, does not impute a creditor's state of mind to the debt collector, *see Randolph v. IMBS, Inc.*, 368 F.3d at 729, and it creates the validation process—including the debt collector's ability to proceed on the assumption that an uncontested debt is valid— precisely because the debt collector does not share the same information as the creditor with respect to the debt's validity. *Id*.

More importantly, even if it were the case that a debt collector would necessarily assume whatever a creditor assumed, the opposite would certainly not be the case: A creditor need not necessarily "assume" the validity of its claimed debt even in circumstances where its agent, the debt collector, is entitled to make that assumption for the limited purpose of proceeding with its collection activity. Thus, saying that the creditor will assume the validity of the debt says something well beyond saying that the debt collector will do so. *See Iyamu v. Clarfield, Okon, Salomone, & Pincus, P.L.*, __ F. Supp. 2d __, __ 2013 WL 3192038 at *3 (S.D. Fla. June 24, 2013).

**C.**    McCalla Raymer places great reliance on the Second Circuit's decision in *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360 (2d Cir. 2005), but its characterization of the facts of the case contains a critical error. McCalla Raymer argues that in that case, as in this one, the debt collector's notice "omitted" the statement that the debt collector would assume the validity of an undisputed debt and substituted a statement that the creditor would assume the debt's validity. McCalla Br. 26. But the notice in *Greco* did not omit the disclosure that the debt collector would assume the validity of the debt: It specifically said that

- 23 -

"this Firm" would assume the debt's validity, and the letter had previously identified the firm as the debt collector. *See* 412 F.3d at 361. Such a disclosure does not omit the required statement that the debt collector will assume the validity of the debt.

McCalla Raymer cites no authority upholding the validity of a notice that actually *omitted* the statement that the debt collector would assume the debt's validity, or substituted a statement that someone else would assume the validity of the debt. Ms. Caceres's opening brief, by contrast, cited the wealth of authority holding that the omission of that statement violates § 1692g because it is likely to mislead the least sophisticated consumer. Caceres Br. 35–39.

**D.** McCalla Raymer argues that a misstatement does not violate § 1692g(a) unless it would discourage the debtor from exercising her rights to dispute the debt or request the identity of the original creditor under § 1692g(b). *See* MR Br. 25. McCalla Raymer cites decisions stating that "[t]he critical question is whether [plaintiff] has been led to believe 'that [she] did not have thirty days in which to dispute the validity of the debt.'" *Federal Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 510 (6th Cir. 2007). McCalla Raymer, however, overlooks or seeks to obscure

- 24 -

a fundamentally important point: That question is critical only when, as in *Lamar*, the gravamen of the plaintiff's claim that § 1692g(a) has been violated is that the notice failed to effectively disclose the consumer's dispute rights or contained other statements that overshadowed that disclosure. In *Lamar*, for example, the claim was that although the notice contained all the required information, the way it was written did not effectively convey the plaintiff's right to dispute the debt and contained other statements that overshadowed its description of that right. *See id*. at 508–12; *see also Caprio v. Healthcare Revenue Recovery Group, LLC*, 709 F.3d 142, 148 (3d Cir. 2013).

But as this Court noted in *LeBlanc*, failing adequately to explain or overshadowing a consumer's dispute rights is only one of a number of ways in which a debt collector's communications may violate the FDCPA. *LeBlanc*, 601 F.3d at 1195 n.18. In particular, a notice may violate the FDCPA not only by discouraging a consumer from exercising her dispute rights, but also by making threats or exaggerating the consequences of failing to dispute the debt in ways that "ha[ve] the purpose of effect of making a debtor *more likely* to respond." *Id*. at 1193 (emphasis added)

(quoting *Sparks v. Phillips & Cohen Assocs., Ltd.*, 641 F. Supp. 2d 1234, 1248 (S.D. Ala. 2008)).

If, as McCalla Raymer argues, a misstatement were actionable only if it discouraged a consumer from disputing a debt, then the many decisions holding that a validation notice violates § 1692g(a) when it says that the consumer's debt will be assumed valid if not disputed, but does not say by whom, would be incorrect. *See* Caceres Br. 37 (citing cases). By misleadingly implying that an undisputed debt might be assumed valid by a court, credit reporting agency, or other authority, such a misstatement would obviously not *discourage* the consumer from disputing the debt: The more draconian the consequences of not disputing the debt, the more motivated the consumer will be to dispute it. Yet McCalla Raymer *acknowledges* that such notices violate § 1692g(a) and thus contradicts its own explanation of why its own notice did not.

**E.**    Finally, McCalla Raymer asserts that saying the creditor will assume the debt's validity if it is not disputed in thirty days is not misleading because nothing in the FDCPA prohibits a creditor from making such an assumption. McCalla Raymer's argument fails for two reasons. First, even if a creditor may permissibly assume that an undisputed debt

is valid, the statement that the creditor will do so remains different in substance from the statutorily required statement that the *debt collector* will make that assumption, and thus will mislead a consumer about the consequences under the FDCPA of not disputing the debt.

Second, and more fundamentally, McCalla Raymer is wrong in asserting that creditors may freely "assume" that debts not disputed in thirty days are valid. Of course, the FDCPA *itself* does not prohibit them from doing so: As a general matter, the FDCPA "does not regulate creditors' activities at all." *Randolph*, 368 F.3d at 729. By the same token, the FDCPA does not *authorize* creditors to assume the validity of undisputed debts, as it authorizes debt collectors to do.

Rather, the rights and duties of creditors are largely determined by state law and other applicable federal statutes. And, as a general matter, the law does not permit a creditor to attempt to collect a debt from a consumer, and certainly not to sue to do so, merely on the basis of an "assumption" that the debtor owes money: The creditor must have a good faith belief that the debt is owed. *See*, *e.g.*, *Trucap Grantor Trust 2010-1 v. Pelt,* 84 So.3d 369, 371–72 (Fla. Dist. Ct. App. 2012) (Florida law requires that a creditor suing on a note must verify its allegations), *rev. de-*

*nied*, 103 So.3d 141 (Fla. 2012). McCalla Raymer's substitution of the statement that the creditor would assume the validity of the debt for the statutorily required statement that the debt collector would do so thus not only violated the terms of § 1692g(a), but, in a very real sense, was false and misleading.

## CONCLUSION

For the foregoing reasons, this Court should reverse the order of the district court and remand for reinstatement of the complaint and further proceedings on the merits.

Respectfully submitted,

s/Scott L. Nelson

Scott D. Owens                          Scott L. Nelson
Scott D. Owens, P.A.                    Public Citizen Litigation Group
664 E. Hallandale Beach Blvd.           1600 20th Street NW
Hallandale, FL 33009                    Washington, DC 20009
954-589-0588                            202-588-7724
954-337-0666 (Fax)                      202-588-7795 (Fax)
scott@scottdowens.com                   snelson@citizen.org

*Attorneys for Appellant*

December 2, 2013

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Appellant's Reply Brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief is composed in a 14-point proportional typeface, Century Schoolbook BT. As calculated by my word processing software (Word 2010), the brief (excluding those parts permitted to be excluded under the Federal Rules of Appellate Procedure and this Court's rules) contains 5,933 words.

/s/Scott L. Nelson
Scott L. Nelson

**CERTIFICATE OF SERVICE**

I hereby certify that, on December 2, 2013, this Appellant' Reply Brief was served through the court's ECF system on:

> Barry R. Davidson
> bdavidson@hunton.com
> Jamie Z. Isani
> isani@hunton.com
> Hunton & Williams LLP
> 1111 Brickell Ave., Suite 2500
> Miami, FL 33131

> /s/Scott L. Nelson
> Scott L. Nelson